# THAMES RIVER RECYCLING, INC., ET AL. *v.* ANTHONY J. GALLO ET AL.
## (AC 16742)

Lavery, Landau and Daly, Js.

Argued April 1—officially released November 3, 1998

*Ira B. Grudberg,* with whom were *Alinor C. Sterling* and, on the brief, *David L. Belt,* for the appellants-appellees (defendants).

*James A. Wade,* with whom were *Bradford S. Babbitt* and, on the brief, *Janet C. Hall,* for the appellees-appellants (plaintiffs).

*Opinion*

LANDAU, J. The defendants, Anthony J. Gallo (Gallo), Star Distributors, Inc., (Star) and A. Gallo Company of Litchfield (Gallo of Litchfield), appeal from the trial court's judgment rendered in favor of the plaintiffs, following a jury trial, on the plaintiffs' amended complaint alleging breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, conversion, misrepresentation and violation of the Connecticut Unfair Trade Practices Act (CUTPA).[1] The plaintiffs, Thames River Recycling, Inc. (Thames River), Peter Holmes, Paul Novak and John F. McCarthy, filed a cross appeal challenging the trial court's award of attorney's fees and its failure to order an additur. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 1, 1980, legislation known in Connecticut as the "bottle bill"[2] became law. The bottle bill requires consumers to pay a five cent deposit on certain glass, plastic and aluminum beverage containers at the time of purchase. Consumers may return the empty containers (returns) to obtain a refund of the five cent deposit. The beverage distributor is also required to pay a one and one-half cent handling fee for each return redeemed in the distributor's territory. After paying the deposit and the handling fee, the distributor owns the returns, which are recyclable materials, and may dispose of them as it chooses. See General Statutes §§ 22a-244 and 22a-245.

Originally, consumers returned cans and bottles to retailers who sold the beverages. In the mid-1980s, reverse vendors or third party recyclers developed another method of returning recyclable containers.

---

[1] General Statutes § 42-110a et seq.

[2] See General Statutes § 22a-243 et seq.

Reverse vendors typically place machines in supermarkets. The machine accepts a return by reading the bar code on its side to determine the distributor responsible for it and then issues a nickel or equivalent store credit. The reverse vendor then charges the beverage distributor for the nickel refund paid to the consumer and the one and one-half cent handling fee. In return, the beverage distributor owns the returns. The reverse vendor either gives the distributor a credit for the scrap value of the returns or disposes of the recyclable materials as directed by the distributor.

In response to the bottle bill, Holmes, Novak and McCarthy, who are each beverage distributors, founded Thames River in 1979, and were its corporate stockholders and directors. Thames River accepts and processes all forms of returns. At the time Thames River was formed, each of the shareholders agreed to send all of the returns they owned by virtue of their being beverage distributors to Thames River. Each of Thames River's shareholders directed that the returns handled by reverse vendors be sent to Thames River, which in turn sold the recyclable materials and divided any profit among the shareholders. New England Recycling Company (New England Recycling) and Environmental Products Corporation (Environmental Products) are two reverse vendors with whom Thames River, Star and Gallo of Litchfield do business.

In 1992, Holmes, McCarthy and Novak wanted to increase the volume of recyclable materials handled by Thames River and approached Gallo, a beverage distributor who does business as Star and Gallo of Litchfield, to invite him to become a shareholder and principal in Thames River. During the parties' negotiations, representatives from Thames River asked Gallo how many returns they could expect from Star and Gallo of Litchfield. Gallo told them he was unable to provide

that information.[3] Thames River representatives, who knew that approximately 90 to 95 percent of beverage containers sold are returned, then asked Gallo for the number of cases of beverages Gallo's businesses sold annually. Gallo responded that his annual volume of sales was approximately three million cases. Gallo did not, however, tell the representatives of Thames River that he did not intend to send 25 percent of the returns to Thames River because Star and Gallo of Litchfield had prior agreements with New England Recycling and Environmental Products whereby the reverse vendors sold the returns and paid Star and Gallo of Litchfield the scrap value of the recyclables.

On the basis of the representations made by Gallo and in consideration of a promise of all Star's and Gallo of Litchfield's returns, Thames River, Holmes, McCarthy and Novak entered into an agreement with Gallo, Star and Gallo of Litchfield as set forth in a series of documents.[4] In return, Gallo received shares of stock in Thames River at no cost to him.[5] As part of the agreement, Star and Gallo of Litchfield were to send all of their recyclable materials to Thames River, and Gallo was made a director of Thames River. Thames River agreed to purchase recycling equipment owned by Star Container Recycling and Processing Company and City Leasing, two companies controlled by Gallo that handled returns for both Star and Gallo of Litchfield. In addition, Thames River agreed to handle containers called "bar bottles," which had to be sorted and

---

[3] At trial, Gallo conceded that he would have been able to provide the requested information.

[4] The documents included a preliminary letter of agreement, an admittance agreement, an exclusive supply and sales agreement, an addendum to an agreement dated February 26, 1981, a contract of purchase and sale, a security agreement and a bill of sale.

[5] Holmes, McCarthy and Novak had previously paid $10,000 for their equivalent shares of stock.

returned to breweries; Thames River did not provide this service for anyone other than the defendants.

From the inception of the contract, Star and Gallo of Litchfield failed to send all of their returns to Thames River. Gallo never directed New England Recycling and Environmental Products to deliver the recyclable materials owned by Star and Gallo of Litchfield to Thames River, and he kept the scrap credits issued to Star and Gallo of Litchfield by New England Recycling and Environmental Products. In 1994, when he was confronted with his failure to supply all of his recyclable materials to Thames River, Gallo replied that third party recyclables were not part of the agreement and repudiated his obligation to send them to Thames River. The plaintiffs commenced suit against the defendants in July, 1994. In August, 1994, Gallo attempted to tender his shares of stock in Thames River. He also resigned his position as a director of the corporation. Thames River rejected Gallo's tender of his shares of stock.

The jury answered a number of interrogatories[6] and rendered a verdict in favor of the plaintiffs, assessing

---

[6] The jury's answers to interrogatories reveal its findings:

(1) There was an enforceable contract between Star and Thames River obligating Star to supply Thames River with recyclable material collected by New England Recycling and Environmental Products.

(2) Star breached its contract with Thames River.

(3) Thames River sustained $533,953.91 in damages as a result of Star's breach of contract.

(4) There was an enforceable contract between Gallo of Litchfield and Thames River obligating Gallo of Litchfield to supply Thames River with recyclable material collected by New England Recycling and Environmental Products.

(5) Gallo of Litchfield breached its contract with Thames River.

(6) The money damages Thames River sustained as a result of Gallo of Litchfield's breach is "included in # 3."

(7) Gallo breached his contract with Thames River.

(8) The money damages Thames River sustained as a result of Gallo's breach is the "same as # 3."

(9) Gallo made a negligent misrepresentation to Thames River prior to the time the parties signed the exclusive supply and sales agreement and the admittance agreement, which resulted in damage to Thames River.

$400,465.43 in damages against Star and $133,488.47 in damages against Gallo of Litchfield, but nothing against Gallo. The trial court awarded the plaintiffs $120,000 in attorney's fees and costs from Gallo pursuant to the plaintiffs' CUTPA claim. The defendants appealed and the plaintiffs cross appealed. Additional facts will be mentioned as necessary.

I

On appeal, the defendants claim (1) that the trial court improperly instructed the jury, (2) that the trial court should have set aside the verdict and (3) that there was insufficient evidence for the jury to find that there was a meeting of the minds among the parties. We disagree.

A

The defendants claim that the trial court improperly instructed the jury (1) as to how to determine whether

(10) The money damages Thames River sustained as a result of Gallo's negligent misrepresentation are the "same as # 3."

(11) Gallo breached any fiduciary duty he had to Thames River.

(12) The money damages Thames River sustained as a result of any breach of fiduciary duty by Gallo are "see # 3."

(13) Star and Gallo of Litchfield did not breach the implied covenant of good faith and fair dealing with Thames River.

(14) Because they did not breach the implied covenant of good faith and fair dealing, Thames River sustained no money damages.

(15) Gallo breached the implied covenant of good faith and fair dealing with Thames River.

(16) The money damages Thames River sustained as a result of Gallo's breach of the implied covenant of good faith and fair dealing are "see # 3."

(17) through (20) Star and Gallo of Litchfield did not violate CUTPA. Because they did not violate CUTPA, Thames River did not sustain any money damages.

(21) Gallo violated CUTPA.

(22) The money damages Thames River sustained as a result of Gallo's CUTPA violation are "see # 3."

(23) through (28) Star, Gallo of Litchfield and Gallo did not convert any property of Thames River. Because they did not convert any of its property, Thames River did not sustain any money damages.

the parties had a meeting of the minds, (2) as to how to determine whether there was a breach of fiduciary duty and (3) as to whether there were CUTPA violations. The defendants also claim (4) that the trial court improperly refused to instruct the jury that Gallo's tender of his shares terminated the contract.

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. . . . We must review the charge as a whole to determine whether it was correct in law and [whether it] sufficiently guided the jury on the issues presented at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Elijah*, 42 Conn. App. 687, 691, 682 A.2d 506, cert. denied, 239 Conn. 936, 684 A.2d 709 (1996).

Our standard of review on this claim is whether it is reasonably probable that the jury was misled. See *McSwiggan* v. *Kaminsky*, 35 Conn. App. 673, 681, 647 A.2d 5, cert. denied, 231 Conn. 934, 649 A.2d 256 (1994). "The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Citations omitted; internal quotation

marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 603, 662 A.2d 753 (1995).

1

The defendants' first claim as to the jury charge is that the trial court's instruction with respect to whether there was a meeting of the minds among the parties was misleading and inconsistent. The following additional facts are necessary for our review.

The parties agreed that they never discussed New England Recycling and Environmental Products during their negotiations. Prior to the execution of the agreements at issue, the plaintiffs and the defendants had different agreements with New England Recycling and Environmental Products: Holmes, McCarthy and Nolan instructed the reverse vendors to take all returns to Thames River for recycling; Star and Gallo of Litchfield instructed New England Recycling and Environmental Products to sell the returns as recyclable material, and to give Star and Gallo of Litchfield credit against the deposit and handling charges. After the execution of the subject agreements, the parties continued to do business as usual with the third party vendors; that is, Star and Gallo of Litchfield did not direct New England Recycling and Environmental Products to take their returns to Thames River.

At trial, the plaintiffs argued that the defendants agreed when Gallo signed the exclusive supply and sales agreement on September 29, 1992, that Star and Gallo of Litchfield would give "to Thames River an exclusive franchise to receive and recycle all of the Distributor's recyclable material." Gallo, Star and Gallo of Litchfield contended that the language did not include the returns collected by the third party vendors.

The defendants took exception to the following portion of the trial court's jury charge as to count one

of the amended complaint: "In order to constitute a contract, the parties must assent to the same thing. In the same sense, if there was a misunderstanding between the parties or a misapprehension by one of them or both so that their minds never met, no contract was entered into by them, *the making of a contract depends not on the parties' having meant the same thing but on their having said the same thing.* However, even though parties manifest mutual assent to the same words of the agreement, there may be no contract because of a material difference of understanding as to the terms of the exchange." (Emphasis added.) The defendants claim that the emphasized words do not correctly express the law of contracts in Connecticut and that because they are juxtaposed with correct statements of the law, the charge is inconsistent and misleading. We are unpersuaded.

Our review of the trial court's instruction as to count one of the plaintiffs' amended complaint[7] reveals that

---

[7] The trial court's charge as to count one stated in part: "In the first count of their amended complaint, Thames River claims that [Star] and [Gallo of Litchfield] breached the exclusive supply and sales agreement dated September 29th, 1992 by failing to supply Thames River with all of the distributor's . . . recyclable material. Specifically, Thames River claims that [Star] and [Gallo of Litchfield] failed to supply it with recyclable material received by [New England Recycling] and [Environmental Products] and processed and resold by them. [Star] and [Gallo of Litchfield] claim there was no obligation to deliver the recyclable material received by [New England Recycling] and [Environmental Products] to Thames River.

"The Exclusive Supply and Sales Agreement dated September 29th, 1992, states that the distributors, meaning [Star] and [Gallo of Litchfield], give to Thames River, meaning Thames River Recycling, an exclusive franchise to receive and recycle all of the distributor's recyclable material. The parties disagree concerning whether the phrase 'all of the distributor's recyclable material' includes recyclable material received, processed, and sold by [New England Recycling] and [Environmental Products] of which was never returned to [Star] and [Gallo of Litchfield].

"Before considering whether [Star] and [Gallo of Litchfield] breached a contract with Thames River Recycling, you must first determine whether an enforceable contract existed between them. In order for you to find that an enforceable contract existed between [Star] and [Gallo of Litchfield] and Thames River, you must find that their minds had truly met. In order for

it was approximately five pages in length and was adapted to the law and to the issue in question. Contrary

you to find that there was an offer and acceptance sufficient to create an enforceable contract, you must find that both the offer and the acceptance were based on an identical understanding by the parties.

"In order to constitute a contract, the parties must assent to the same thing. In the same sense, if there was a misunderstanding between the parties or a misapprehension between the parties or a misapprehension by one of them or both so that their minds never met, no contract was entered into by them, the making of a contract depends not on the party's having meant the same thing but on their having said the same thing. However, even though the parties manifest mutual assent to the same words of the agreement, there may be no contract because of a material difference of understanding as to the terms of the exchange.

"The burden is on the party seeking to recover damages for breach of contract to prove that there was a meeting of the minds with respect to its version of the claimed contract. In determining what the parties intended, you may consider not only the language used in the contract, but also the circumstances surrounding the making of the contract, the motives of the parties, and the purposes they sought to accomplish. You may also consider a party's conduct for the purpose of determining what it intended.

"The words of a contract must be given their common usage and meaning. The word distributors in the phrase 'distributor's recyclable material' is the possessive form that denotes ownership. Ownership is evidenced by title, possession, or right of possession, control, or responsibility. Therefore, unless [Star] and [Gallo of Litchfield] owned the recyclable materials collected and resold by [New England Recycling], this recyclable material was not [Star and Gallo of Litchfield's] recyclable material and [Star] and [Gallo of Litchfield] were not obligated to supply it to Thames River.

"In Connecticut, all beer distributors must accept and refund a deposit on all empty beverage containers of the kind, size, and brand sold by that distributor. A refund of five cents deposit on each container offered for refund and pay a one and one-half cent handling fee on each such container offered for refund. Accordingly, beer distributors own all of the empty beverage containers that they accepted and refunded deposits on. Connecticut law does not require a dealer or operator of a redemption center to return empty beverage containers to the distributor.

"However, Connecticut law does mandate that distributors remove or arrange for the removal of the containers from the premises of the dealer or redemption center. Ambiguities in a contract document or documents are to be resolved against the party responsible for its drafting. Therefore, when two meanings are possible, an agreement is to be construed against the party who drew it and for whose benefit the provision was inserted.

"Where the parties appear to have agreed to the terms of the contract, when circumstances disclose a latent ambiguity in the meaning of an essential word and this ambiguity goes to the essence of the supposed contract, the result is that there is no contract. . . ."

to the defendants' assertion, the language "the making of a contract depends not on the parties' having meant the same thing but on their having said the same thing" is the law of Connecticut, although maybe not as artfully expressed as it might have been. To wit, "It is the general rule that a contract is to be interpreted according to the intent expressed in its language and not by an intent the court may believe existed in the minds of the parties. [*Mulligan* v. *Rioux*, 229 Conn. 716, 740, 643 A.2d 1226 (1994)]; *Barnard* v. *Barnard*, 214 Conn. 99, 110, 570 A.2d 690 (1990); *Powel* v. *Burke*, 178 Conn. 384, 387, 423 A.2d 97 (1979)." *Levine* v. *Massey*, 232 Conn. 272, 278, 654 A.2d 737 (1995); see also *Garrison* v. *Garrison*, 190 Conn. 173, 175, 460 A.2d 945 (1983); *Hydro-Hercules Corp.* v. *Gary Excavating, Inc.*, 166 Conn. 647, 652, 353 A.2d 714 (1974); *Hess* v. *Dumouchel Paper Co.*, 154 Conn. 343, 347, 225 A.2d 797 (1966); *Nutmeg State Machinery Corp.* v. *Shuford*, 129 Conn. 659, 661, 30 A.2d 911 (1943) ("making of a contract does not depend upon the secret intention of a party but upon the intention manifested by his words or acts, and on these the other party has a right to proceed").[8]

We will not conduct an overly technical review of a trial court's instruction to determine whether it is correct. Read as a whole, the trial court's instruction on whether there was a meeting of the parties' minds was an accurate statement of the law in Connecticut and

---

[8] "There is authority for the proposition that if A makes an agreement with B, thinking that B is C, the contract is voidable at A's option. There are undoubtedly many statements to that effect in cases and in accepted textbooks. 1 Page, Contracts, § 260; 1 Elliot, Contracts, § 102; Anson, Contracts (Patterson Ed.) § 214. It is to be noted, however, that Page prefaces his many citations to support his text with the statement that in most of the cases there is present an element of fraud in which, we have no doubt, he means to include cases where B has reason to know A is acting under a mistake. On the bald proposition, Williston, 5 Contracts (Rev. Ed.), §§ 1558, 1573, takes an opposite view, as does the Restatement, 2 Contracts, § 503, and particularly illustration 2 on page 967." *Nutmeg State Machinery Corp.* v. *Shuford*, supra, 129 Conn. 661.

did not mislead the jury. Therefore, the trial court's instruction was not improper as to the issue of the meeting of the minds.

2

The defendants' second claim with respect to the jury instruction is that the trial court improperly charged the jury that Gallo, as a stockholder and director of Thames River, owed the corporation a fiduciary duty and put the issue before the jury. We disagree.

The following review of the pleadings is necessary for our analysis of this claim. Count four of the plaintiffs' amended complaint alleges that Thames River is a close corporation. Paragraph nineteen alleges that "Gallo, in his capacity as a director of Thames River, owed a fiduciary duty to the corporation and its shareholders, and was bound to use and have the utmost good faith, honesty and loyalty to Thames River and its shareholders." Paragraph twenty-one alleges that "Gallo, in his capacity as a shareholder, owes a fiduciary duty to the other stockholders of Thames River, and is bound to use and have the utmost good faith, honesty and undivided loyalty toward its shareholders." Count four also alleges, in paragraphs twenty-two and twenty-three, that Gallo breached his fiduciary duties to Thames River and its shareholders, who, as a result of his breach, suffered damages.

The trial court gave the jury the following instructions, in part, with respect to the allegations of count four: (1) "Shareholders in a closely held corporation owe one another substantially the same fiduciary duties that partners owe to one another, the utmost good faith and loyalty. Like the duties of loyalty owed by directors to the corporation and the shareholders, the duty of loyalty from one shareholder in a closely held corporation to another requires conduct and good faith, and in

a manner he reasonably believes to be in the best interest of the corporation and with such care as would be exercised by an ordinarily prudent person in a like position under similar circumstances." (2) "The duty of loyalty owed by directors of the corporation and the shareholders protects faithlessness in self dealing by directors. A director must not only act affirmatively to protect the interest of the corporation, but also refrain from doing anything that would work injury to the corporation or deprive it of property or advantage which might properly come to it. Evidence of bad faith, dishonesty or malfeasance is not required to establish a breach of loyalty. Even passive negligence can constitute a breach of the director's duties." The jury answered "yes" to the interrogatory: "Did Anthony Gallo breach any fiduciary duty he had to Thames River Recycling, Inc.?"

Gallo claims that Connecticut law supports the proposition that he did not owe a fiduciary duty to the stockholders or the corporation as a consequence of his being a director and a minority stockholder who did not control the corporation. He also claims that as a matter of law, the breach of fiduciary duty claim should not have gone to the jury.[9]

The plaintiffs, on the other hand, cite cases, but no Connecticut appellate case, that stand for the proposition that minority shareholders in a close corporation

---

[9] The defendants have not provided any legal authority for the proposition that a director of a close corporation does not owe the corporation or the stockholders a fiduciary duty. "We will not review such claims, absent law and analysis." *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 101, 709 A.2d 14 (1998).

The defendants also provide no analysis of their claim that the breach of fiduciary duty claim should not have gone to the jury. "[A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . *Fitzgerald* v. *Fitzgerald*, 16 Conn. App. 548, 554, 547 A.2d 1387, cert. denied, 210 Conn. 802, 553 A.2d 615 (1988). *Fromer* v. *Freedom of Information Commission*, 36 Conn. App. 155, 156, 649 A.2d 540 (1994)." (Internal

owe a fiduciary duty to the corporation and to the stockholders.[10] The plaintiffs do, however, cite Connecticut authority for the rule that a director of a corporation occupies a fiduciary relationship to both the corporation and its stockholders. See *Katz Corp.* v. *T. H. Canty & Co.*, 168 Conn. 201, 207, 362 A.2d 975 (1975). They also cite authority for the requirement that a director act in good faith. See General Statutes § 33-756.[11] The plaintiffs are correct in their assertion of the law of this state with respect to the duty a director owes a corporation.

The plaintiffs argue that because the defendants did not request separate jury interrogatories regarding each duty alleged, it cannot be known whether the jury found that Gallo breached his duty as a director or his duty as a shareholder or both. Therefore, the jury's verdict must stand. The defendants reply that the general verdict rule is inapplicable in this case. We agree with the plaintiffs.

Our Supreme Court has held that the general verdict rule applies to the following scenarios: "(1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." *Curry* v. *Burns*, 225 Conn. 782, 801, 626 A.2d 719 (1993).

quotation marks omitted.) *New London Federal Savings Bank* v. *Tucciarone*, supra, 48 Conn. App. 101.

[10] We need not decide this question in order to decide the issue on appeal.

[11] General Statutes § 33-756 (a) provides: "A director shall discharge his duties as a director, including his duties as a member of a committee: (1) In good faith; (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) in a manner he reasonably believes to be in the best interests of the corporation."

In this case, the plaintiffs' first theory of recovery is that Gallo, in his capacity as a shareholder, breached a fiduciary duty; their second theory is that Gallo, in his capacity as director, breached a fiduciary duty. The defendants denied that Gallo owed a duty either as a director or as a shareholder. This count, therefore, falls into the third scenario as set forth in *Curry*. Absent interrogatories that reveal the basis for the verdict on this count, the application of the general verdict rule is appropriate. See *Fabrizio* v. *Glaser*, 38 Conn. App. 458, 461, 661 A.2d 126 (1995), aff'd, 237 Conn. 25, 675 A.2d 844 (1996).

Here, the parties did submit interrogatories to the jury. Only one of them concerned Gallo's breach of fiduciary duty, i.e., "[d]id Anthony Gallo breach any fiduciary duty he had to Thames River Recycling, Inc.?" Gallo was in a position to ask the trial court to submit jury interrogatories to address the issue he now presents on appeal. Gallo took an exception to the trial court's refusal to charge the jury as he requested—that a minority shareholder owes no fiduciary duty to a corporation. It is clear that he was aware of the two legal theories on which the plaintiffs' claim of breach of fiduciary duty was based. To preserve properly the issue for appeal, he should have asked for separate interrogatories to address each of the legal theories alleged. "When there are alternative bases for the verdict, it is necessary for the interrogatories to reveal the actual grounds for the jury's verdict in order for the general verdict rule to be precluded." Id., 464.

Furthermore, it is too late in the day for the defendants to make this argument. Our rules of practice contain provisions for the framing of issues for trial. Pleadings have an essential purpose in the judicial process. See *Rummel* v. *Rummel*, 33 Conn. App. 214, 217, 635 A.2d 295 (1993). "The purpose of pleading is to apprise the court and opposing counsel of the issues

to be tried, not to conceal basic issues until the trial is under way . . . ." *DuBose* v. *Carabetta*, 161 Conn. 254, 261, 287 A.2d 357 (1971). The defendant is not excused from following our established rules of practice. If Gallo was aware of the two separate factual bases on which count four was pleaded, he could have corrected the problem by filing a request to revise[12] or a motion to strike[13] or any other procedural remedy provided by the rules of practice.

A party to a lawsuit cannot take his chances with the jury and hope to overturn the verdict on appeal where he knew the issue was not properly framed in the pleadings and failed to take corrective action, either by taking advantage of the rules of practice to narrow the issues for the jury or by asking for separate interrogatories. "[I]f parties will insist on going to trial on issues framed in a slovenly manner, they must abide the verdict; judgment will not be arrested for faults in statement when facts sufficient to support the judgment have been substantially put in issue and found. . . . Want of precision in alleging the cause of an injury for which an action is brought, is waived by contesting the case upon its merits without questioning such defect." (Internal quotation marks omitted.) *Cellu Tissue Corp.* v. *Blake Equipment Co.*, 41 Conn. App. 413, 418, 676 A.2d 405 (1996).

"[T]he so-called general verdict rule provides that, if a jury renders a general verdict for one party, and *no party requests interrogatories*, an appellate court will presume that the jury found every issue in favor of the prevailing party." (Emphasis added; internal quotation marks omitted.) *Curry* v. *Burns*, supra, 225 Conn. 786. Therefore, the trial court's jury charge was not improper.

---

[12] Practice Book § 147, now § 10-35.

[13] Practice Book § 151, now § 10-39.

3

The defendants claim that the trial court improperly instructed the jury with respect to the plaintiffs' CUTPA claim because it misstated the law in regard to negligence and did not give the defendants' requested instruction regarding intent to deceive. We disagree with both claims.

The defendants' claims concern the following portion of the trial court's charge. "[T]o recover under CUTPA for a simple breach of contract, the plaintiff must show substantial aggravating circumstances intending to breach. Under [CUTPA] intent to deceive is not relevant. The fact that a deception occurred and injured others in business is all that is required. A failure to disclose information does not violate the Connecticut Unfair Trade Practices Act unless our distributors, [Gallo of Litchfield or Gallo], had a duty to disclose the information.

"In determining whether [Star, Gallo of Litchfield or Gallo] had an obligation to disclose to Thames River that some recyclable material originally distributed by [Star] and [Gallo of Litchfield] was being collected and resold by [New England Recycling] and [Environmental Products] without returning it to [Star] or [Gallo of Litchfield], you should apply the instructions I gave you in connection with the claim of negligent misrepresentation from count three of the amended complaint.

"In considering the second [factor], proof that a *party acted negligently is not sufficient* to establish that the party's conduct was immoral, unethical or unscrupulous. Therefore, proof that a party acted negligently is *not sufficient* to establish that the party violated [CUTPA] unless the party claiming the act was violated also proved by a preponderance of the evidence that the third factor, which I will describe in a moment, has been violated. Where the claimed violation of CUTPA

is grounded in negligence, proof that the first criterion for determining that the act had been violated, that whether the conduct of the defendant violated public policy as it has been established by statute or common law or other established counts of unfairness standing *alone is sufficient* to establish a violation of the act.

"The third factor for determining whether an act or practice was unfair or deceptive, that is whether it caused substantial unjustified injury to consumers, competitors or other business people, is the most important of the three criteria for determining whether there has been a violation of CUTPA.

"Proof of an unjustified injury to consumers, competitors or other business people is a necessary predicate for recovery under [CUTPA]. In order for an act or practice to have caused substantial unjustified injuries to consumers, competitors or other business persons, the following three factors must be found: One, the injury caused must have been substantial; two, the injury caused must not have been outweighed by any countervailing benefits to consumers or by competition that the practice produces; and three, that the injury caused must have been an injury that the consumer, competitor or other business person could not reasonably have avoided." (Emphasis added.)

Our courts are well versed in the law that determines whether CUTPA has been violated. "[I]n determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;

(2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen] . . . . All three criteria do not need to be satisfied to support a finding of unfairness.

"A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. . . . *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 105–106, 612 A.2d 1130 (1992)." (Internal quotation marks omitted.) *Gebbie* v. *Cadle Co.*, 49 Conn. App. 265, 279, 714 A.2d 678 (1998).

a

The defendants' first claim with respect to the CUTPA charge is that the trial court included the instruction that negligence alone "is sufficient to establish a violation of the act." Although this language is printed in the transcript and we acknowledge that this statement of the law, as transcribed, is incorrect, our review of the transcript and the charge in its entirety leads us to conclude that this statement did not mislead the jury.

As noted by the emphasis in our recitation of the challenged instruction, the court thrice stated the law with respect to negligence and CUTPA, twice correctly and once incorrectly. We also note that the defendants did not bring the incorrect statement to the trial court's attention immediately following the trial court's charge when there was time for the trial court to correct it.[14] When giving a lengthy jury instruction, as in this case,

---

[14] The defendants' claim was properly preserved for appellate review by their request to charge.

"an inadvertent slip of the tongue by the trial court"; *State* v. *Delosantos*, 13 Conn. App. 386, 391, 536 A.2d 609 (1988); may occur.

"An erroneous instruction, even of constitutional dimension, is harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury was misled." (Internal quotation marks omitted.) Id. Here, the trial court correctly stated the law and informed the jury that to find a violation of CUTPA grounded in negligence, the plaintiff must prove that the act violated public policy and "caused substantial unjustified injury to consumers, competitors or other business people." Taken as a whole, the trial court's charge did not mislead the jury.

b

The defendants' second claim with regard to the CUTPA instruction is that the trial court improperly told the jury that intent to deceive is not relevant. We disagree with the defendants' claim.

The crux of the defendants' argument is that the trial court did not use their request to charge no. 39 verbatim.[15] There is no requirement that a trial court instruct the jury in the exact words requested by a party. The trial court may put the substance of the request to charge in its own words. See *Goodmaster* v. *Houser*, 225 Conn. 637, 644 n.7, 625 A.2d 1366 (1993). All that is required is that the instruction "must correctly adapt

---

[15] The defendants' request to charge no. 39 stated: "Although no intent to deceive is necessary in order to establish a deceptive act or practice in violation of the Connecticut Unfair Trade Practices Act, the lack of an intent to deceive is sufficient to justify a finding that conduct was not immoral, unethical or unscrupulous and, therefore, did not satisfy the second criterion for determining whether the action was unfair in violation of the unfair trade practices act." The defendants cite in support of this request *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 216–17, 579 A.2d 69 (1990). The text cited by the defendants does not address the issue of intent to deceive.

the law to the case in question and must provide the jury with sufficient guidance . . . ." *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 603.

The defendants rely on *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 657 A.2d 212 (1995), and *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 579 A.2d 69 (1990), particularly our Supreme Court's holding that "the first prong, standing alone, is insufficient to support a CUTPA violation, at least when the underlying claim is grounded solely in negligence." Id., 217. The pleadings in both of those cases are clearly distinguishable from the pleadings in the case before us because the CUTPA claim here is not grounded solely in negligence. In *Williams Ford, Inc.*, and *A-G Foods, Inc.*, the plaintiffs' CUTPA claims were based on negligence only. Here, the plaintiffs alleged breach of contract, negligent misrepresentation and breach of fiduciary duty by reference in their CUTPA count against Gallo. Therefore, the trial court's instruction on the CUTPA count correctly adapted the law to the case in question and provided sufficient guidance to the jury.

The plaintiffs argued that even if the trial court's instruction was improper, which we hold it was not, the impropriety was harmless because the defendants incorrectly presume that the jury based its CUTPA finding solely on the negligent misrepresentation claim. As we have noted, the plaintiffs' CUTPA count alleged three different theories as to how the defendants violated the act. The parties did not submit interrogatories to the jury to determine the basis of the CUTPA award. Only the jurors know why they found that Gallo violated CUTPA. Therefore, the general verdict rule applies for the same reasons as those discussed in part I A 2 concerning breach of fiduciary duty. See *Curry* v. *Burns*, supra, 225 Conn. 782.

We therefore conclude that the jury instruction with respect to the CUTPA count was proper.

4

The defendants next claim that the trial court improperly refused to charge the jury that Gallo's tender of his shares terminated the obligation to perform. More specifically, the defendants claim that the trial court improperly failed to permit the jury to consider whether Gallo's tender of his Thames River stock after the present lawsuit was commenced terminated the exclusive supply agreement and whether damages could be assessed after that date. We do not agree.

"When either party has offered evidence which he claims proves a certain set of facts important to the decision of the case and properly requests the court to charge the law applicable to those facts, it is the duty of the court to comply in substance with the requests. *Berman* v. *Kling*, 81 Conn. 403, 407, 71 A. 507 [1908]." *Tyburszec* v. *Heatter*, 141 Conn. 183, 187, 104 A.2d 548 (1954). The following facts, which are not in dispute, are relevant to our consideration of this claim.

At a meeting of the Thames River board of directors in the spring of 1994, the plaintiff McCarthy accused Gallo of not sending his recyclable materials from Environmental Products and New England Recycling to Thames River. Gallo responded that the third party recyclables were not part of the agreement, a position that he maintained at another directors' meeting one month later. In July, 1994, Thames River commenced the present lawsuit against Gallo. Thereafter, Gallo attempted to tender his stock in Thames River. The corporation rejected his tender offer, which was followed by Gallo's resignation as a director of Thames River. Star and Gallo of Litchfield continued to send their returns to Thames River as they had done previously, but not the third party returns.

The defendants claim that any obligation they had under the supply agreement was terminated in August,

1994, and that the trial court had a duty to instruct the jury on the legal consequences of that termination. The defendants submitted requests to charge that related to whether Gallo's offer and tender of his stock in Thames River and Thames River's refusal to accept that tender terminated the admittance and supply agreements. The defendants' theory is that if the supply agreement was terminated, there would be no damages after the date of termination. We are not persuaded.

"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as he would have been in had the contract been performed. *West Haven Sound Development Corporation* v. *West Haven*, [201 Conn. 305, 319, 514 A.2d 734 (1986)]; *Gordon* v. *Indusco Management Corporation*, 164 Conn. 262, 272, 320 A.2d 811 (1973). Damages for breach of contract are to be determined as of the time of the occurrence of the breach. *Kevin Roche-John Dinkeloo & Associates* v. *New Haven*, 205 Conn. 741, 749, 535 A.2d 1287 (1988); *Gordon* v. *Indusco Management Corporation*, supra, 164 Conn. 264." (Internal quotation marks omitted.) *West Haven Sound Development Corporation* v. *West Haven*, 207 Conn. 308, 317–18, 541 A.2d 858 (1988).

The plaintiffs' position is that the defendants breached the exclusive supply agreement when they failed to send all of the recyclable materials generated by Star and Gallo of Litchfield to Thames River, and that Gallo repudiated the agreement when he informed his fellow stockholders that third party recyclables were not part of the agreement and that he would not direct New England Recycling and Environmental Products to send his recyclable material to Thames River. We agree.

"An anticipatory breach of contract occurs when the breaching party repudiates his duty before the time for

performance has arrived. *Martin* v. *Kavanewsky*, 157 Conn. 514, 518–19, 255 A.2d 619 (1969); *Koski* v. *Eyles*, 37 Conn. Sup. 861, 862, 440 A.2d 317 (1981). Its effect is to allow the nonbreaching party to discharge his remaining duties of performance, and to initiate an action without having to await the time for performance. *Martin* v. *Kavenewsky*, supra." (Internal quotation marks omitted.) *Pullman, Comley, Bradley & Reeves* v. *Tuck-it-Away, Bridgeport, Inc.*, 28 Conn. App. 460, 465, 611 A.2d 435, cert. denied, 223 Conn. 926, 614 A.2d 825 (1992). Actions that occur after the time of breach are "irrelevant to the amount of damages that were previously determined." *Rametta* v. *Stella*, 214 Conn. 484, 493, 572 A.2d 978 (1990); *Levesque* v. *D & M Builders, Inc.*, 170 Conn. 177, 183, 365 A.2d 1216 (1976). Gallo's efforts to tender his stock in the corporation after Star and Gallo of Litchfield failed to send all of their returns to Thames River and after Gallo told his fellow stockholders that third party recyclables were not part of the agreement and after the plaintiffs commenced suit are not relevant. Therefore, the trial court did not improperly refuse to charge the jury that Gallo's tender of his stock terminated the obligation to perform.

## B

The defendants claim that the trial court improperly refused to set aside the verdicts (1) against Gallo of Litchfield and (2) against Gallo on the CUTPA claim. These claims lack merit.

"A trial court's discretion is limited when setting aside a jury verdict. Paramount is the basic principle that it must not usurp the factfinding function of the jury. It is well established law that, where a jury trial is elected, [l]itigants have a constitutional right to have issues of fact decided by the jury . . . . The right to a jury trial is fundamental in our judicial system, and . . . the

right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of a trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded [persons] passed upon by the jury and not by the court. . . . Further, [t]he conclusion of a jury on issues of fact, if it is one at which honest [persons] acting fairly and intelligently could arrive reasonably, must stand, even though the opinion of the trial court and [this court] might be that a different result should have been reached. . . . The trial judge is, therefore, limited to determining whether there is any evidence to support the verdict." (Citations omitted; internal quotation marks omitted.) *Lemonious* v. *Burns*, 23 Conn. App. 735, 738–39, 583 A.2d 1328, cert. denied, 218 Conn. 903, 588 A.2d 1078 (1991).

"The evidence must be construed in a light most favorable to sustaining the jury's verdict. . . . It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Citations omitted; internal quotation marks omitted.) *State* v. *Radzvilowicz*, 47 Conn. App. 1, 16–17, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997).

1

The defendant Gallo of Litchfield claims that because there was insufficient evidence to support the jury's assessment of damages against it, the trial court improperly refused to set aside the verdict. More specifically, Gallo of Litchfield argues that on the basis of the testimony of the plaintiffs' expert witness and the plaintiffs'

maximum damages model, it is liable only for 2 to 3 percent of the damages the plaintiffs claim, or $25,000. In this case the jury rendered a total verdict of $533,953.91, of which $133,488.47 was assessed against the defendant Gallo of Litchfield. We disagree.

Our review of the transcript and the exhibits reveals that there was sufficient evidence to support the jury's verdict against Gallo of Litchfield. In addition to the testimony of the plaintiffs' expert and the maximum damages model he developed, the jury could reasonably have found that the plaintiffs incurred losses in addition to those identified in the maximum damages model. The plaintiffs presented evidence that Thames River hired additional employees and purchased more trucks to handle the volume of recyclable material promised by the defendants and to sort the defendants' bar bottles. The Thames River stockholders purchased a new building to accommodate the increased volume of recyclable material and continued to incur rent at its prior location. The stockholders also expended their personal resources to obtain credit. On the basis of those subordinate facts, we conclude that there was sufficient evidence to support the jury's verdict and that the trial court did not abuse its discretion in failing to set aside the verdict against Gallo of Litchfield.

2

The defendants claim that the CUTPA verdict against Gallo should have been set aside because (1) it was based on an improper jury charge and (2) the trial court's award of CUTPA damages was improper where the jury did not award damages against Gallo.[16] We are unpersuaded.

---

[16] In a footnote in their brief, the defendants also attempt to assert a claim that the plaintiffs were comparatively negligent, which the defendants failed to raise by means of a special defense, and that the trial court failed to give certain requested instructions in that regard. The plaintiffs quite appropriately point out in their brief that our Supreme Court has specifically disap-

"Whether a practice is unfair and thus violates CUTPA is an issue of fact. . . . The facts found must be viewed within the context of the totality of circumstances which are uniquely available to the trial court." (Citation omitted; internal quotation marks omitted.) *Krawiec* v. *Blake Manor Development Corp.*, 26 Conn. App. 601, 607–608, 602 A.2d 1062 (1992).

a

The defendants' first claim is that the CUTPA verdict against Gallo should be set aside because the trial court's instructions to the jury were improper. The defendants' claim lacks merit for all of the reasons set forth in part I A 3 of this opinion. In addition, "CUTPA reflects a public policy that favors remedying wrongs that may not be actionable under other bodies of law. . . . It is, therefore, not necessary to find [the defendant] liable for some underlying actionable wrong in order to support a CUTPA claim." (Citation omitted.) *Willow Springs Condominium Assn.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 43, 717 A.2d 77 (1998). Therefore, the trial court properly exercised its discretion in refusing to set aside the CUTPA verdict.

b

The defendants' second claim is that the trial court improperly assessed attorney's fees against Gallo regarding the CUTPA claim because (1) the jury had not assessed damages against him and (2) the award is contrary to public policy. We do not agree.

i

"[T]he public policy underlying CUTPA is to encourage litigants to act as private attorneys general and to

proved of this practice. See *State* v. *Grant*, 221 Conn. 93, 107 n.13, 602 A.2d 581 (1992). In their reply brief, the defendants concede that they did not intend to raise this issue as a separate claim. Therefore, we will not review it.

engage in bringing actions that have as their basis unfair or deceptive trade practices. . . . In order to encourage attorneys to accept and litigate CUTPA cases, the legislature has provided for the award of attorney's fees and costs. . . . Once liability has been established under CUTPA, attorney's fees and costs may be awarded at the discretion of the court. . . . We will not interfere with the trial court's exercise of this discretion unless there is manifest abuse or injustice appears to have been done." (Internal quotation marks omitted.) *Gebbie* v. *Cadle Co.*, supra, 49 Conn. App. 279–80.

"The award of attorney's fees and punitive damages under CUTPA has some features not common to such awards in other types of cases. For example, the trial court is not precluded from exercising this discretion even if it finds that the plaintiff has not suffered ascertainable damages. *Tillquist* v. *Ford Motor Credit Co.*, 714 F. Sup. 607 [617] (D. Conn. 1989). Additionally, the amount of attorney's fees that the trial court may award is based on the work reasonably performed by an attorney and not on the amount of recovery. General Statutes § 42-110g (d)." *Jacques All Trades Corp.* v. *Brown*, 42 Conn. App. 124, 131, 679 A.2d 27 (1996), aff'd, 240 Conn. 654, 692 A.2d 809 (1997).

In the matter before us, the jury found Gallo liable for breach of contract, breach of fiduciary duty, negligent representation and violation of CUTPA. In answering interrogatories, the jury determined a lump sum of damages in answer to interrogatory number three, which it assessed against the two corporate defendants on the verdict form. In answering interrogatories dealing with the damages the plaintiffs sustained as a result of Gallo's breach and tortious actions, the jury responded, "same as 3." The reasonable explanation for this response is that although the jury found that Gallo's actions were illegal, they were not the proximate cause of the plaintiffs' losses. Nonetheless, in keeping with the law of

this jurisdiction, the plaintiffs were entitled to have the trial court award them attorney's fees for acting as private attorneys general in order to redress Gallo's deceptive behavior in failing to disclose to his business associates that a significant number of recyclables would not be sent to Thames River.

### ii

Finally, the defendants claim that because this litigation is a commercial dispute and not a dispute between a consumer and a corporation, the plaintiffs should not be awarded attorney's fees. This public policy argument is contrary to our case law. Our Supreme Court previously has "stated in no uncertain terms that CUTPA imposes no requirement of a consumer relationship." *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 496, 656 A.2d 1009 (1995). "We agree with the plaintiff that CUTPA is not limited to conduct involving consumer injury. General Statutes § 42-110g (a) provides in part: 'Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages.' Person, as defined by the statute, includes: 'a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity.' General Statutes § 42-110a (3). The statute's coverage is broad and its purpose remedial. *Hinchliffe* v. *American Motors Corporation*, 184 Conn. 607, 616, 440 A.2d 810 (1981). The General Assembly has not seen fit to limit expressly the statute's coverage to instances involving consumer injury, and we decline to insert that limitation. We agree with the plaintiff that a competitor or other business person can maintain a CUTPA cause of action without showing consumer injury." *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, 192 Conn. 558, 566–67, 473 A.2d 1185 (1984).

If the legislature intended the remedy afforded by CUTPA to apply to all persons, including corporations, the entire statute, with all its provisions, must also apply to corporations. Therefore, the plaintiffs were entitled to attorney's fees in the discretion of the trial court. Because we find that it did not abuse its discretion, the trial court's award of attorney's fees to the plaintiffs was proper and there was no reason to set aside the verdict.

C

The defendants' final claim on appeal is that there was insufficient evidence for the jury to determine that there was a meeting of the minds among the parties. We do not agree.

The standards by which we review claims of insufficient evidence are well established. "An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that its decision is otherwise erroneous in law." (Internal quotation marks omitted.) *Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 34, 663 A.2d 432 (1995).

"We do not sit as the seventh juror when we review the sufficiency of the evidence; *State* v. *King*, 216 Conn. 585, 602, 583 A.2d 896 (1990); rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . Moreover, [i]n reviewing the jury verdict, it is well to remember that [j]urors are not expected to lay aside matters of common knowledge or their own

observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994).

"Evidence is sufficient to sustain a verdict where it induces in the mind of the [trier] that it is more probable than otherwise that the fact in issue is true. . . . It is the province of the trier of fact to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . On appellate review, therefore, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . In analyzing a sufficiency of the evidence claim, the test that we employ is whether, on the basis of the evidence before the jury, a reasonable and properly motivated jury could return the verdict that it did." (Citations omitted; internal quotation marks omitted.) *Baker* v. *Cordisco*, 37 Conn. App. 515, 528, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995).

"[T]o form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; see Restatement (Second), Contracts §§ 1 (c), 15, 19 (Tent. Dr. 1964); 1 Williston, Contracts (1957) §§ 18, 22; see also *Hoffman* v. *Fidelity & Casualty Co.*, 125 Conn. 440, 444, 6 A.2d 357 (1939); *Clark* v. *Diefendorf*, 109 Conn. 507, 510, 147 A. 33 (1929)." *Ubysz* v. *DiPietro*, 185 Conn. 47, 51, 440 A.2d 830 (1981). "The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act." (Internal quotation marks omitted.) Id.

In addition to the facts set forth previously in this opinion, the jury also could reasonably have found that Gallo signed all of the documents and agreements

related to Thames River on the advice of counsel. On the basis of the evidence before it, including copies of all documents signed by the parties,[17] the jury could reasonably have inferred from the subordinate facts that there was a meeting of the minds among the parties and that Gallo, Star and Gallo of Litchfield agreed to give Thames River all of their recyclable materials. We will not disturb the jury's verdict because it was within the province of the jury to pass on the credibility of the witnesses, and there was sufficient evidence by which the members of the jury could reasonably infer that there was a meeting of the minds among the parties.

## II

The plaintiffs have cross appealed claiming that the trial court improperly (1) abused its discretion by awarding less than all of the attorney's fees it found to be reasonable and (2) failed to award an additur based upon the inherent ambiguity between the jury's answers to interrogatories and its verdict. We affirm the judgment of the trial court.

## A

The plaintiffs' first claim is that the trial court abused its discretion by awarding less than all of the attorney's fees that the court found to be reasonable pursuant to the plaintiffs' CUTPA claim. We disagree.

The jury found that Gallo violated CUTPA. Pursuant to § 42-110g,[18] plaintiffs prevailing on a CUTPA claim are entitled to attorney's fees, which are to be awarded by the trial court. The trial court held a hearing on December 23, 1996, on the plaintiffs' motion for an

---

[17] See footnote 4.

[18] General Statutes § 42-110g (d) provides in relevant part: "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ."

award of $235,066.86 in attorney's fees and costs. The trial court found the hourly rate charged by the plaintiffs' counsel was reasonable and that the total fee charged was reasonable. The trial court was aware of the factors to be considered in the award of attorney's fees and costs as articulated in *Steiger* v. *J. S. Builders, Inc.*, supra, 39 Conn. App. 38; see footnote 19; and awarded the plaintiffs $100,000 in attorney's fees and $20,000 in costs, exclusive of costs permitted by General Statutes § 52-257. The plaintiffs claim that the trial court abused its discretion by awarding less than half of the attorney's fees and costs it found to be reasonable, and ask this court to award the amount of damages found to be reasonable.

"Awarding . . . attorney's fees under CUTPA is discretionary; General Statutes § 42-110g (a) and (d) . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Internal quotation marks omitted.) *Neilsen* v. *Wisniewski*, 32 Conn. App. 133, 138, 628 A.2d 25 (1993). "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . *State* v. *Polanco*, 26 Conn. App. 33, 41, 597 A.2d 830 [cert. denied, 220 Conn. 926, 598 A.2d 367] (1991). The salient inquiry is whether the court could have reasonably concluded as it did. *Yale University School of Medicine* v. *McCarthy*, [26 Conn. App. 497, 501, 602 A.2d 1040 (1992)]. It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds. *State* v. *Schroff*, 198 Conn. 405, 413, 503 A.2d 167 (1986). In determining whether there has been an abuse of discretion, much depends upon the circumstances of each case. Id."

(Internal quotation marks omitted.) *State* v. *Arbour*, 29 Conn. App. 744, 748, 618 A.2d 60 (1992).

The transcript of the trial court's hearing on the plaintiffs' CUTPA claim is before us for review. In rendering its decision, the trial court cited two Appellate Court cases, and said that it was aware of twelve factors[19] it is to consider when awarding attorney's fees and that it considered all of those guidelines and did not seize on one to the exclusion of the others. See *Steiger* v. *J. S. Builders, Inc.*, supra, 39 Conn. App. 39.

"Our review of whether the trial court correctly applied the guidelines and set a reasonable award of attorney's fees is limited to a consideration of whether the court abused its discretion." Id. The trial court informed the parties when it made the award of costs and attorney's fees that it knew the law and applied it to the facts of this case as required. The plaintiffs have pointed to nothing in the record or the transcript to indicate that the trial court did not apply the law to the facts. The plaintiffs' only claim is that the trial court did not award all of the fees and costs the plaintiffs assert were due them. Without more, the plaintiffs have not sustained their burden of persuading this court that there was an abuse of discretion. Therefore, we will not disturb the trial court's award.

## B

The plaintiffs' second claim on their cross appeal is that the trial court improperly failed to award an additur

---

[19] The trial court should consider the following factors in setting reasonable attorney's fees: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional

based on the ambiguity inherent in the jury's answers to the interrogatories. Specifically, the plaintiffs claim that the trial court improperly failed to assess $533,953.91 in damages against Gallo.

A review of the facts specific to this claim is necessary. The jury was instructed to answer twenty-eight interrogatories relevant to the plaintiffs' claims against the defendants. See footnote 6. The interrogatories contained two sets of three questions each concerning whether there was an enforceable contract, whether the contract had been breached and what damages were the result of the breach. Significantly, there was no interrogatory asking whether any party's breach of contract was the proximate cause of the plaintiffs' loss. One set of each of these interrogatories was directed to each of the corporate defendants. The jury entered a monetary figure in response to interrogatory number three only, "$533,953.91," which concerned Star. The answer with respect to Gallo of Litchfield was "included in # 3." The jury answered the interrogatory concerning the amount of damages Thames River sustained as a result of Gallo's breach "same as 3." Although the jury found that Gallo had violated CUTPA, the foreperson simply drew a line in response to the damages question on the interrogatory form. The jury completed the verdict form assessing $400,465.43 in damages against Star and $133,488.47 against Gallo of Litchfield and none against Gallo personally. The plaintiffs moved for an additur or, in the alternative, that the verdict be set aside and a new trial ordered as to damages.

The plaintiffs argue that because the jury found Gallo breached the contract by failing to send all his returns to Thames River, made a misrepresentation, breached his fiduciary duties, breached his duty of good faith and

relationship with the client; and (12) awards in similar cases. *Johnson* v. *Georgia Highway Express, Inc.*, [488 F.2d 714, 717–19 (5th Cir. 1974).]" *Steiger* v. *J. S. Builders, Inc.*, supra, 39 Conn. App. 38.

fair dealing and violated CUTPA, it is clear that Thames River suffered $533,953.91 in damages. The plaintiffs ask this court to make an award of additur. In the alternative, the plaintiffs asks that the case be remanded to the trial court for a new trial as to damages only. The defendants contend that the ambiguity between the interrogatories and the verdict requires this court to set aside the verdict and order a new trial.

"The trial court's refusal to set aside the verdict or to order an additur is entitled to great weight and every reasonable presumption should be given in favor of its correctness. In reviewing the action of the trial court in denying the motions for additur and to set aside the verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict they did. The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . Our task is to determine whether the total damages awarded falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 113, 663 A.2d 398 (1995).

"If, on the evidence, the jury could reasonably have decided as they did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . . However, it is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain

limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, mistake or corruption. . . . It is the function of this court to determine whether the trial court abused its discretion in denying [a party's] motion. . . . In reviewing this issue, our sole responsibility is to decide whether, on the evidence presented, the jury could fairly have reached the conclusion it did." (Citations omitted; internal quotation marks omitted.) Id., 113–14.

Our Supreme Court has established the parameters of a trial court's discretion in ruling on a motion for additur. They are: whether (1) the jury award shocks the conscience, (2) the plaintiff, who has proved substantial injuries, is awarded inadequate damages and (3) the verdict is inherently ambiguous. Id., 114–15. None of the parameters enunciated by our Supreme Court is present in the jury award before this court. Although the jury's award is approximately one-half of what the plaintiffs' claimed, the members of the jury could reasonably have found that although Gallo breached his contract, committed numerous torts against the plaintiffs and violated CUTPA, his actions were not the cause of the plaintiffs' loss. The jury reasonably could have inferred from the subordinate facts that the plaintiffs' loss was caused by the corporate defendants' failure to send all of their recyclable materials to Thames River.[20] Because the jury's verdict does not shock the conscience, is not inadequate and is not ambiguous, the

[20] We note that this is not a zero damages case. See *Malmberg v. Lopez*, 208 Conn. 675, 546 A.2d 264 (1988). In *Malmberg*, our Supreme Court held that the reviewing "court's endorsement of one plausible explanation of the verdict over another would amount merely to speculation. Such ambiguity requires a rehearing in full, on both liability and damages." Id., 683. Here, the jury answered interrogatories as to whether Gallo breached the contract, his fiduciary duty and an implied covenant of good faith and fair dealing affirmatively, and responded to interrogatories asking the amount of money damages the plaintiffs sustained as a result of those breaches with the words, "see # 3."

trial court did not improperly fail to set aside the verdict or award an additur.

The judgment is affirmed.

In this opinion the other judges concurred.