CACIQUE, INC., a California
Corporation, Plaintiff–
Appellee,

v.

ROBERT REISER & COMPANY, INC.,
a Massachusetts Corporation,
Defendant–Appellant.

Juan Marquez; Marquez Brothers
International, Inc., Third
Parties–Appellants.

No. 98–55967.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1999.

Decided March 2, 1999.

Massachusetts, Mark H. Epstein, Munger Tolles & Olson, Los Angeles, California, for the defendant-appellant.

Robert Broadbelt, Allan Browne, Browne & Woods, Beverly Hills, California, for the plaintiff-appellee.

Robert C. Danneskiold, Ferrari, Olsen, Ottoboni & Bebb, San Jose, California, David I. Gindler, Irell & Manella LLP, Los Angeles, California, for the third-party-appellants.

Before: LAY,* GOODWIN, and SCHROEDER, Circuit Judges.

GOODWIN, Circuit Judge:

This interlocutory appeal from a civil contempt order tests the ability of a plaintiff to discover a competitor's financial data in an action against a third party for allegedly furnishing the plaintiff's trade secret to the competitor. This action is brought against only the party that allegedly disclosed the trade secret, not the competitor who has been held in contempt. The theory of the complaint apparently is that California's version of the Uniform Trade Secrets Act ("UTSA") authorizes a plaintiff to sue the party who leaked the trade secrets to an unauthorized user for a reasonable royalty based on the earnings of the unauthorized user. It is argued that the financial data is relevant to a determination of the reasonable royalty.

Under the plain language of the California statute and California case law, we hold that a trade secret plaintiff can recover a reasonable royalty only when both actual damages and unjust enrichment are unprovable. Because unjust enrichment is provable in this case, it was error to hold the non-party competitor in contempt for refusing to disclose its sales information to the plaintiff.

Andrew Z. Schwartz, Claire Laporte, Vickie L. Henry, Foley, Hoag & Eliot, Boston,

* Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

## I. Procedural Background

Cacique is a leading producer of *queso fresco*, a fresh, uncultured Hispanic cheese.[1] Cacique's "Ranchero" brand is the largest selling fixed-weight cheese in Southern California, outselling even Kraft American singles. Cacique's major competitor in the Hispanic cheese market is Marquez Brothers International. Both Cacique and Marquez use "Vemag" brand continuous vacuum extruders sold by Robert Reiser, a vendor of food processing equipment.

Cacique brought a diversity action against Reiser under California's Uniform Trade Secrets Act (Cal. Civ.Code § 3426), common law unfair competition, and statutory unfair competition (Cal. Bus. & Prof.Code §§ 17200 et seq.). Cacique claims to have designed modifications to the Vemag extruder that allow *queso fresco* to be efficiently formed, portioned, and cut into identical-weight cakes. Cacique argues that the efficient production of identical-weight cakes of *queso fresco* is of significant advantage in the Hispanic cheese market and that the modifications thus constitute a valuable trade secret. Cacique alleges that after it provided Reiser with access to the trade secret, Reiser sold Vemag equipment embodying the trade secret to Marquez. Reiser's primary defense is that the modifications do not constitute a trade secret. We need not reach, and at this time have no opinion on, the merits of that question.

Reiser has estimated that its profits from the sale of the allegedly infringing Vemag extruders totaled only $20,000–$30,000. Cacique believes, however, that Marquez has been able to increase its cheese production by 50% as a result of Reiser's misappropriation.[2] Not surprisingly, Cacique is not satisfied with Reiser's unjust enrichment as its measure of damages. Instead of unjust enrichment, Cacique is seeking a reasonable royalty from Reiser—a reasonable royalty based not on Reiser's limited sales of the infringing equipment, but based on the cheese produced by Reiser's customers, i.e., Cacique's competitors, using the specially modified food extruders. In effect, Cacique is demanding that Reiser compensate it for the profits Cacique's competitors have reaped, presumably at Cacique's expense, as a result of Reiser's misappropriation.[3]

In pursuit of its theory of damages, Cacique sought discovery from Marquez, a non-party witness, regarding Marquez' *queso fresco* pricing, sales volume, and revenue. Cacique argued that the sales information would help the trier of fact assess the impact of the modified Vemag vacuum extruders on Marquez' profitability and, consequently, the reasonable royalty to which Cacique is entitled. Marquez moved for a protective order prohibiting discovery of the confidential sales information on two grounds. First, the sales information Cacique sought is itself a highly confidential trade secret that Marquez is loathe to share with its arch rival. Second, Marquez argued that the sales information was not relevant to an issue in the case because § 3426.3 does not entitle Cacique to a reasonable royalty measure of damages.[4]

---

1. "Hispanic cheese" is a segment of the U.S. cheese market recognized by the U.S. Department of Agriculture and the dairy industry. Production of Hispanic cheese increased 25% between November 1997 and November 1998 and now constitutes over 1% of all U.S. cheese production. *See* Agricultural Statistics Service, U.S. Department of Agriculture, *Dairy Products–November 1998 Highlights* (visited Feb. 2, 1999) <http://www.usda.gov:80/nass/PUBS/TODAYRPT/dary0199.txt>.

2. Cacique voluntarily dismissed a related state court suit that alleged misappropriation by Marquez.

3. Normally, a plaintiff would achieve this result by seeking to prove its actual damages, which California trade secret law clearly allows. *See* Cal. Civ.Code § 3426.3 (1997). Cacique, however, both at trial and in this appeal has abandoned any efforts to establish its actual damages and is relying solely on a reasonable royalty measure of damages.

4. Section 3426.3 (1997) provides in pertinent part:

   (a) A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.
   (b) If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

On this latter ground, Reiser filed a motion in limine to exclude the Marquez sales information at trial.

The court rejected Marquez' and Reiser's arguments of irrelevance and accepted Cacique's argument that a reasonable royalty might be the appropriate measure of its damages. Conceding its unfamiliarity with California trade secrets law, the district court stated that an unjust enrichment measure of damages would inadequately compensate Cacique for the misappropriation and analogized to patent law where reasonable royalties are a common measure of damages. The district court thus held that the Marquez sales information was relevant to an issue in the case. The district court responded to Cacique's confidentiality concerns by imposing an "attorney's eyes only" protective order on the sales information.

In order to appeal the district court's ruling, Marquez refused to comply with the subpoena. The district court held Marquez and Juan Marquez, an employee of Marquez, in contempt. The district court awarded $4400 in attorney's fees but stayed payment pending appeal. Due to the pendency of this appeal, the district court ordered the trial bifurcated into liability and damages phases. The district court decided that the Marquez sales information was not relevant to liability, so the liability phase could proceed despite this appeal. The damages phase will not proceed until this court rules on the duty of Marquez to supply the requested financial data.

In this appeal, Marquez and Reiser argue that district court erred because, as a matter of state law, Cacique is not entitled to a royalty and therefore the Marquez sales information is not relevant to an issue in the case. Alternatively, appellants argue that the district court should have prohibited discovery of the sales information because it is, itself, a valuable trade secret belonging to Cacique's chief competitor and a non-party. See F.R.C.P. Rule 26(c)(7). We do not reach this latter issue because we hold that the sales information is not relevant to an issue in the case.

. . . .

## II. Jurisdiction and Standard of Review

■ We have jurisdiction over this interlocutory appeal even though piecemeal appeals are rarely entertained. A contempt order and imposition of sanctions on a nonparty for failure to obey a discovery order or subpoena is a final order for purposes of 28 U.S.C. § 1291. *See In re Subpoena Served on Cal. Pub. Util. Comm.,* 813 F.2d 1473, 1476 (9th Cir.1987).

■ The issues raised in this appeal are primarily questions of law reviewed de novo. Though contempt orders and the imposition of sanctions are reviewed for an abuse of discretion, see *Hook v. Arizona Dep't of Corrections,* 107 F.3d 1397, 1403 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 171, 139 L.Ed.2d 114 (1997), appellants do not directly challenge the contempt order. Instead, appellants challenge the underlying decision to enforce Cacique's discovery request. If the order disobeyed is vacated then the "contempt order naturally falls." *Thomassen v. United States,* 835 F.2d 727, 732 (9th Cir. 1987).

■ Discovery decisions are also ordinarily reviewed for an abuse of discretion. *See Zimmerman v. Bishop,* 25 F.3d 784, 789 (9th Cir.), *cert. denied,* 513 U.S. 1043, 115 S.Ct. 637, 130 L.Ed.2d 543 (1994). But whether there is an issue to which the information sought is relevant is a question of state law, and the district court's conclusions of state law are reviewed de novo as questions of law. *See Gibson v. County of Riverside,* 132 F.3d 1311, 1312 (9th Cir.1997). Enforcing a discovery request for *irrelevant* information is a per se abuse of discretion. *See Epstein v. MCA,* 54 F.3d 1422 (9th Cir. 1995). On either ground, error of law or abuse of discretion, such an order must be vacated.

## III. The Protective Order

■ The district court's grant of a protective order does not absolve Cacique from showing that the information sought is relevant. A protective order's "purpose . . . is to prevent harm by limiting disclosure of *rele-*

*vant and necessary* information." *Sega Enterprises v. Accolade, Inc.,* 977 F.2d 1510, 1532 (9th Cir.1992) *quoting Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1325 (Fed.Cir.1990) (emphasis added). Because Cacique is unable to establish the relevance of the information sought, we reverse the district court's decision to enforce Cacique's discovery request.

## IV. Reasonable Royalty Under California UTSA § 3426.3(b)

■ Cacique's primary argument for discovery of the Marquez sales information is its relevance to Cacique's claim for a reasonable royalty. California law is clear, however. Cacique is entitled to a reasonable royalty only if neither actual damages nor unjust enrichment are provable. Since there appears to be no hurdle to proving unjust enrichment in this case, the Marquez sales information is not subject to discovery.

■ Reasonable royalties for trade secret infringement are authorized by § 3426.3(b) which provides in pertinent part: "[i]f neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty...." Under the plain language of the statute and California case law, "reasonable royalty is reserved for those instances where the court finds that neither actual damages to the holder of the trade secret nor unjust enrichment to the user is provable." *Morlife v. Perry,* 56 Cal.App.4th 1514, 1529, 66 Cal. Rptr.2d 731 (1997). California law differs on this point from both the UTSA and Federal patent law, neither of which require actual damages and unjust enrichment to be unprovable before a reasonable royalty may be imposed. *See* UTSA § 3(a) (1990) (*"[i]n lieu* of damages measured by any other methods, the damages ... may be measured by imposition of ... a reasonable royalty ...") (emphasis added); 35 U.S.C. § 284 (1998) ("the court shall award the [patent] claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty ...").

There is simply no reason to believe that unjust enrichment could not be proved. Cases finding unjust enrichment unprovable under § 3426.3 have involved unusual circumstances not present here. *See Unilogic v. Burroughs,* 10 Cal.App.4th 612, 626–630, 12 Cal.Rptr.2d 741 (1992) (infringing product never brought to market, just used internally); *Vermont Microsystems v. Autodesk,* 138 F.3d 449 (2d Cir.1998) (defendant's profits overstated unjust enrichment because infringing technology was only a tiny part of value of complex software). If Cacique does not credit Reiser's estimates of its profits, Cacique should seek discovery of Reiser's sales data. By examining Reiser's records, a trier of fact should be able to determine how many extruders embodying the alleged trade secret Reiser sold and how much profit Reiser made. Even if the district court decides that only a small portion of Reiser's profits are due to the trade secret, cf. *Vermont Microsystems,* the court can compare the sales of modified and unmodified Vemags to determine Reiser's unjust enrichment.

We empathize with the district court's equitable concerns. This case poses the unusual situation of a party suing an upstream capital goods manufacturer for trade secret infringement. Under such circumstances, unjust enrichment may not be as complete a remedy as a plaintiff might desire. If Reiser is guilty of misappropriation, the threat to Cacique's profits is posed not by the increased sales of Reiser but by the increased sales of Cacique's competitors, Reiser's customers. Reiser's own profits may represent only a portion of the value of the misappropriated trade secret.[5] We need not decide whether the patent law or the UTSA might

---

5. The value of the trade secret would likely have been divided between Reiser and Marquez. Marquez would have paid for the modified Vemag an amount more than Rieser's cost of producing the infringing extruder but less than the profits Marquez expected to reap from the trade secret. The exact split depends on the parties' relative bargaining positions. Arguably, in such a negotiation, Reiser would have been at a severe disadvantage because it had less information about the ultimate value of the trade secret to Marquez' production capabilities. In any case, there is no logical correlation between the true value of the trade secret and Reiser's $20,000–$30,000 profit.

allow the type of royalty Cacique seeks[6] because as *Morlife* makes clear, a reasonable royalty cannot be freely imposed under the law of California. The California legislature has chosen to limit access to reasonable royalties. That decision must be respected by the Federal courts.

Because unjust enrichment in this case is eminently provable, Cacique does not have a claim for a reasonable royalty under § 3426.3.

### V. Reasonable Royalty Under California UTSA § 3426.2(b)

■ For the first time on appeal, Cacique argues that the Marquez sales information is relevant to a reasonable royalty under § 3426.2(b) of the California UTSA. Section 3426.2(b) provides in pertinent part that "[i]f the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty...." Any reasonable royalty awarded under § 3426.2(b) would compensate Cacique for the continuing use of the process by Reiser after the conclusion of the lawsuit if the district court is convinced that an injunction will be "unreasonable." We decline to address this argument because it has not yet been presented to the district court and was not fully briefed on this appeal. Cacique may present this argument to the district court on remand.

### VI. Cacique's Alternative Arguments for Relevance

■ Finally, we reject Cacique's three alternative arguments for the relevance of the Marquez sales information. First, Cacique claims that the sales information will show that the process significantly increased Marquez' sales and so the information is also relevant to whether the process has "independent economic value." Cacique does have the burden of establishing at trial that the process has independent economic value. *See Abba Rubber Co. v. Seaquist*, 235 Cal. App.3d 1, 19, 286 Cal.Rptr. 518 (1991). However, Reiser concedes in its brief that the process has independent economic value. More importantly, the district court has already rejected this very argument. After this appeal was filed, the district court decided to proceed with the liability phase of the trial without the Marquez sales information. Cacique objected, arguing that the Marquez sales information was necessary for its case on liability. The district court specifically held that the Marquez sales information was not an important part of the liability issues to be decided.

■ Second, Cacique argues that it may be entitled to reasonable royalties under California's common law of unfair competition. In deciding that Cacique could not seek punitive damages under its common law claims, the district court held that Cacique's only claim of unfair competition is Reiser's disclosure of the trade secret to Cacique's competitors. Cacique has not attacked this conclusion and has not claimed any other form of unfair competition on appeal. California courts have held that the common law of trade secrets has been displaced where it conflicts with California's version of the UTSA. *See American Credit Indemnity Co. v. Sacks*, 213 Cal.App.3d 622, 630, 262 Cal. Rptr. 92 (1989). Therefore, Cacique has no common law damage claims beyond those specifically described in § 3426.3.

■ Third, Cacique appears to argue that it can be awarded a reasonable royalty under Cal. Unfair Competition Act, Cal. Bus. & Prof.Code § 17200, et seq. But, California law is clear that §§ 17200 et seq. do not authorize a suit by a private party for damages. *See Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992); *Chatton v. Nat'l Union Fire Ins. Co.* 10 Cal.App.4th 846, 863–864, 13 Cal. Rptr.2d 318 (1992).

---

6. The courts have only rarely considered the availability of the "throughput royalty" Cacique is seeking. *See Foster v. American Machine & Foundry*, 492 F.2d 1317 (2d Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974) (refusing to award throughput royalty in patent dispute because of relevant industry practice). A throughput, or "running," royalty is based on the sales of the defendant's customers. A throughput royalty usually requires the defendant to impose a "use royalty" on its customers, charging them each time they use the technology.

### VII. Conclusion

The Marquez sales information sought by Cacique is not a proper subject of discovery; it is not relevant to an issue in the case. Consequently the contempt order and sanctions imposed by the district court on Marquez are vacated, with costs to be deferred until the conclusion of the litigation.