[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (DOCKET ENTRY NO. 115)
 I
The plaintiff, Consumer Incentive Services International, Inc. (CISI), brings this twelve count revised complaint[1] against the defendant, MemberWorks Incorporated, alleging breach of contract (counts one, two and six) promissory estoppel (counts three, four and seven) anticipatory breach of contract (counts five and eight), unjust enrichment (counts nine and ten) and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b et seq. (counts eleven and twelve) MemberWorks now moves to strike all twelve counts, and the requests for attorneys' fees in counts three through ten, for failure to state a claim upon which relief can be granted.
CISI alleges the following facts. MemberWorks is a CT Page 4827 corporation that provides membership programs offering discounts and services in areas such as travel, entertainment, sports, healthcare, personal finance, insurance, computers and computer software. MemberWorks markets its programs to credit card holders through arrangements with banks, retailers, utilities, major oil companies and other consumer related industries that issue monthly bills. MemberWorks divides its programs into two categories, individual and wholesale. Individual members pay fees directly to MemberWorks. Wholesale members consist of client organizations that re-sell the programs to their customers or provide the programs to their customers as a benefit. Wholesale clients pay periodic membership fees to MemberWorks.
CISI is a closely held corporation that provides membership programs of its own, but also assists other companies in designing, selling and marketing membership programs.
In 1996, CISI and MemberWorks entered into an agreement to develop opportunities to sell membership programs in which CISI and MemberWorks would share in the revenues. CISI's obligations under the agreement included divulging to MemberWorks confidential and proprietary information regarding CISI's business contacts and business programs, providing consulting services to MemberWorks and locating customers to whom MemberWorks could sell its programs on a wholesale basis. The parties also agreed that CISI would receive a percentage of the net revenues derived from opportunities created by CISI.
Effective November 21, 1996, the parties entered into a non-disclosure and non-circumvention agreement (confidentiality agreement) that provided in part: "Whereas, CISI and [MemberWorks] are desirous of exchanging information for purposes of exploring future potential business relationships to the mutual benefit of all parties hereto . . . CISI and [MemberWorks] hereby agree to respect the proprietary and confidential nature of the other parties' Programs . . . documents and information, including names of business referrals and contacts, that are or will be provided and shall keep such information confidential, and shall treat such information as proprietary to the providing party. Both parties shall not reveal any such information to any person nor in any other way utilize or permit utilization of the concept or such information [or] documents without the other CT Page 4828 [party's] prior authorization. . . . CISI and [MemberWorks] agree not to circumvent the efforts of each other, and maintain complete confidentiality with respect to each others' clients, prospects, suppliers, business referrals and contacts and related parties. . . . Both [parties] . . . shall indemnify and hold each other harmless for any losses of damages resulting from . . . failure to keep the information specified herein confidential. . . . In the event suit, action or arbitration is instituted to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover from the other party such sum as the court or arbitrator . . . may adjudge reasonable as Attorney's fees at trial, proceeding or an appeal of such suit or action, in addition to all other sums provided by law."
Thereafter, CISI identified Coverdell Company, an insurance agency and membership related marketing company, as a potential business opportunity. CISI discussed the Coverdell opportunity with MemberWorks on June 4, 1997, at which time MemberWorks authorized CISI to disclose information about MemberWorks to Coverdell. CISI subsequently met with Coverdell to explore the possibility of a business relationship between Coverdell and MemberWorks. On June 25, 1997, CISI sent a confidential memo to MemberWorks explaining that "the [Coverdell] opportunity is huge." Top officials of the three companies met on July 2, 1997. The following day, MemberWorks sent a letter to Coverdell commenting on the exciting market potential of a relationship between MemberWorks and Coverdell.
To safeguard its rights to compensation and protection under the confidentiality agreement, CISI wrote a memorandum to MemberWorks dated July 10, 1997, listing all of the new accounts that CISI had introduced to MemberWorks as of that date, including Coverdell. The memorandum also referred to expected commissions from MemberWorks for bringing in the new accounts. MemberWorks confirmed by letter dated July 31, 1997, that CISI had introduced MemberWorks to the listed accounts. In the letter, MemberWorks also stated that it would not market directly to any of the listed accounts and would pay CISI "a fee to be determined . . . for any net revenue derived from" future "relationships" with the accounts. In a letter to CISI dated August 8, 1997, MemberWorks confirmed the parties' prior conversations CT Page 4829 agreeing that CISI would receive royalty payments for "revenues resulting from a MW/Coverdell relationship."
As discussions between MemberWorks and Coverdell progressed, MemberWorks gave Coverdell a draft of its standard agreement for review. However, on August 25, 1997, when senior executives from CISI, MemberWorks and Coverdell participated in a two day meeting, MemberWorks told Coverdell that it wished to discuss the acquisition of Coverdell. On August 25, 1997, MemberWorks verbally confirmed CISI's role as broker in introducing MemberWorks to CISI. MemberWorks and Coverdell, with CISI's involvement, continued their discussion over the next few months, with CISI's full expectation and understanding that it was entitled to compensation. On October 27, 1997, MemberWorks sent a letter to CISI that included a "complete list of all Protected Accounts just to be sure our files are in synch." The list included Coverdell.
On April 2, 1998, MemberWorks purchased Coverdell. On February 26, 1999, MemberWorks reported to its shareholders that Coverdell "is proving to be a key strategic asset for MemberWorks," and that Coverdell's exceptionally high growth rate "is helping fuel our overall growth." However, MemberWorks has never compensated CISI, as agreed, for creating the Coverdell opportunity.
 II
The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. Peter-Michael,Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. If the facts provable in the complaint would support a cause of action, the motion to strike must be denied. Faulkner v. United Technologies Corp., 240 Conn. 576, 580,693 A.2d 293 (1997). However, a motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged. Novametrix Medical Systems, Inc. v. BOC Group,Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992)
 A
CT Page 4830 Breach of Contract
Count one of the complaint alleges that MemberWorks breached contractual obligations owed to CISI under the confidentiality agreement and its July 31, 1997 letter regarding protected accounts when it failed to compensate CISI for the Coverdell opportunity.
MemberWorks argues that count one is legally deficient because it is unsupported by the necessary facts. MemberWorks contends that CISI does not identify which provisions of the confidentiality agreement and the July 31, 1997 letter were allegedly breached, as required by Practice Book § 10-1, how the alleged breach occurred, or how CISI was damaged by the alleged breach. MemberWorks further argues that neither the revised complaint nor any of the documents attached to the complaint suggest that CISI would be entitled to compensation following acquisition of a new account, when so-called "revenues" would have ceased. CISI replies that count one adequately alleges the breach of contract elements and that Practice Book § 10-1 does not require that the allegations identify which portion of an agreement is violated.
The key elements of a breach of contract action are: (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party and (4) damages. Kennedy v. Westledge, Superior Court, judicial district of New Haven at Meriden, Docket No. 262278 (March 12, 1999, Beach, J.).
Practice Book § 10-1 provides in relevant part: "Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved. . . ."
In the present case, CISI's allegations in count one are legally sufficient insofar as they rely upon MemberWorks' July 31, 1997 letter and attached memorandum from CISI dated July 10, 1997. (See Revised Complaint, Count One, ¶¶ 13, 14, 24, 26 and Exhibit C.). The two documents show that the parties agreed MemberWorks would compensate CISI for net revenues derived from relationships with accounts brought to its attention by CISI, and would not market directly to those CT Page 4831 accounts. (See Revised Compliant, Exhibit C.) CISI also alleges that it introduced MemberWorks to Coverdell for the purpose of exploring a potential business relationship; (see Revised Complaint, Count One, ¶¶ 8, 10, 11, 12, 13 and Exhibit C); which implies that CISI performed its duty pursuant to the agreement. See Pamela B. v. Ment,244 Conn. 296, 308, 709 A.2d 1089 (1998) (stating that "[w]hat is necessarily implied [in an allegation] need not be expressly alleged"). CISI further alleges that MemberWorks breached its contractual obligations by failing to compensate CISI for providing MemberWorks with the Coverdell opportunity. (See Revised Complaint, Count One, ¶¶ 24, 26.) Finally, CISI alleges harm due to the loss of payments related to the Coverdell opportunity. (See Revised Complaint, Count One, ¶¶ 24, 26.) Accordingly, the court finds that CISI has complied with the requirements of Practice Book § 10-1 and alleged all of the elements necessary to support its claim that MemberWorks breached the agreement embodied in its July 31, 1997 letter and attached memorandum.
MemberWorks' position that the breach of contract allegations are legally insufficient because there were no net revenues on which to calculate compensation to CISI after Coverdell's acquisition is not persuasive. The July 31, 1997 letter does not specify the exact nature of MemberWorks' anticipated "relationship" to Coverdell, but merely states that "MW . . . will pay CISI a fee to be determined . . . for any net revenue derived from [the relationship]." (See Revised Complaint, Exhibit C.) Therefore, whether MemberWorks' subsequent acquisition of Coverdell releases MemberWorks from its obligation to compensate CISI is a substantive question for the trier of fact to decide, and does not go to the legal sufficiency of the pleading, which simply states that MemberWorks breached its contractual obligations pursuant to the July 31, 1997 letter.
However, CISI's breach of contract claim in count one is legally insufficient insofar as it relies upon the confidentiality agreement. There, the parties agreed to provide each other with confidential information and to respect the proprietary and confidential nature of the shared programs, documents, information, business referrals and contacts. (See Revised Complaint, Exhibit A.) The parties also agreed not to utilize or permit utilization of such information or documents without the other party's prior CT Page 4832 written authorization. (See id.) However, count one alleges that MemberWorks failed to compensate CISI for the Coverdell opportunity, not that confidentiality was breached or that information was utilized without CISI's written authorization. (See Revised Complaint, Count One, § 24.) Indeed, compensation for the disclosure of information, referrals or contacts, or for the use of such confidential information, is never addressed in the confidentiality agreement. (See Revised Complaint, Exhibit A.) Therefore, to the extent that counts three, eleven and five also rely upon the confidentiality agreement, either in whole or in part,[2] the court finds that they, too, are legally insufficient.
Count two of the complaint alleges that MemberWorks breached contractual obligations owed to CISI under the confidentiality agreement when it failed to compensate CISI as the broker who introduced MemberWorks to Coverdell and created the opportunity for acquiring the company.
MemberWorks argues that the elements for breach of contract have not been adequately alleged because conspicuously absent from the complaint is any allegation that MemberWorks agreed to pay CISI a broker's fee for acquiring Coverdell. CISI replies that it has alleged all of the necessary elements for recovering a broker's fee on breach of contract grounds.
In this instance, the allegations in count two are legally insufficient because CISI merely alleges the legal conclusion that MemberWorks breached the confidentiality agreement by failing to pay CISI a broker's fee for the Coverdell acquisition. The agreement itself makes no reference to MemberWorks' acquisition of accounts introduced to the company by CISI, or to any type of compensation due CISI, as a broker or otherwise, for providing MemberWorks with information about CISI programs, business referrals or contacts. (See Revised Complaint, Exhibit A.) The allegation that MemberWorks verbally confirmed on August 26, 1997, that CISI was the broker who introduced MemberWorks to Coverdell is the only reference to a broker in the revised complaint. (See Revised Complaint, Count One, § 17.) However, the allegations in count two are based entirely upon the terms of the confidentiality agreement, not upon the August 26, 1997 verbal confirmation. Accordingly, the court finds that count two must fail because the alleged facts do not support a breach of CT Page 4833 contract claim for failure to pay a broker's fee. See Kennedyv. Westledge, supra, Superior Court, Docket No. 262278. The court finds similarly defective all subsequent counts of the revised complaint that are based upon allegations that CISI is entitled to a broker's fee pursuant to the confidentiality agreement. Therefore, counts four (promissory estoppel), ten (unjust enrichment) and twelve (CUTPA) are also legally insufficient.
Relying on Vermont Microsystems, Inc. v. Autodesk, Inc.,138 F.3d 449 (2d Cir. 1998), CISI contends that count two must survive because MemberWorks confuses the issue of contract terms with that of the recoverable damages caused by MemberWorks' breach of contract. However, the court's application of a "reasonable royalty" measure of damages inVermont Microsystems involves the very different question of how to calculate damages following determination of liability, and sheds no light whatsoever on whether the allegations in count two are legally sufficient for the purpose of a motion to strike. See id. Accordingly, the court is unpersuaded by CISI's argument.
Count six alleges that MemberWorks breached contractual obligations to compensate CISI pursuant to its August 8, 1997 letter to CISI.
MemberWorks argues that the terms in the letter regarding royalty payments to CISI are inapplicable because those terms were not premised upon MemberWorks' acquisition of Coverdell. MemberWorks, relying upon the same argument it used against the breach of contract claims in counts one and two, asserts that because the company is now a wholly owned subsidiary of MemberWorks, it is not subject to the agreement. MemberWorks thus contends that there are no longer net revenues on which to base royalty payments. CISI replies that count six alleges all of the essential breach of contract elements.
In this instance, count six properly alleges that the parties agreed MemberWorks would pay CISI royalties based on revenues derived from its relationship with Coverdell; (see Revised Complaint, Count Six, §§ 15, 27 and Exhibit D); that CISI introduced Coverdell to MemberWorks, thus implying that it performed its obligation under the agreement; (see Revised Complaint, Count Six, §§ 10, 12, 14, and 15); that MemberWorks breached the parties' agreement, as memorialized in CT Page 4834 MemberWorks' August 8, 1997 letter to CISI, when it failed to compensate CISI; (see Revised Complaint, Count Six, §§ 24 and 27); and that CISI was harmed by the loss in compensation. (See Revised Complaint, Count Six, § 28.) The court accordingly finds that count six alleges all of the elements required to support a breach of contract claim. See Kennedyv. Westledge, supra, Superior Court, Docket No. 262278.
MemberWorks' contention that there are no net revenues as contemplated by the August 8, 1997 letter is not persuasive for the same reasons discussed when a similar objection was raised to count one. The August letter does not describe the anticipated relationship between MemberWorks and Coverdell, but merely refers to the "MW/Coverdale (sic) relationship" and the "net revenue received by MW" from that relationship. (See Revised Complaint, Exhibit D.) Accordingly, whether MemberWorks' subsequent acquisition of Coverdell releases MemberWorks from its obligation to make royalty payments is a question for the trier of fact, and does not affect the legal sufficiency of the pleading for the purpose of a motion to strike.
 B Unjust Enrichment
Count nine alleges that MemberWorks has been unjustly enriched because it did not compensate CISI for creating the Coverdell opportunity.
MemberWorks argues that CISI fails to allege the essential elements of unjust enrichment. MemberWorks also argues that CISI alleges within its claim for unjust enrichment that an enforceable contract existed, and that a party may not allege two claims within a single count. CISI replies that it has properly alleged the elements of unjust enrichment and that such a claim is appropriate where a contract remedy is not available.
Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. In order for the plaintiff to recover under the doctrine, it must be shown that the defendants were benefitted, that the benefit was unjust in that it was not paid for by the defendants, and that the failure of payment operated to the detriment of the CT Page 4835 plaintiff. Menard v. Gentile, 7 Conn. App. 211, 215,508 A.2d 456 (1986). While proof of an enforceable contract might preclude application of an unjust enrichment theory, the plaintiff may be unable to prove an enforceable contract and, at least in the early stages of the proceedings, is entitled to plead inconsistent theories. Haley v. Marketing Corp.,
Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 128067 (June 17, 1993, Rush, J.) Furthermore, Practice Book § 10-25 provides: "The plaintiff may claim alternative relief, based upon an alternative construction of the cause of action."
In the present case, CISI properly alleges the elements of a claim for unjust enrichment. While the revised complaint does not employ all of the terminology typically used in alleging the essential elements of the claim, what is necessarily implied in an allegation need not be expressly alleged; see Pamela B. v. Ment, supra, 244 Conn. 308. Here the allegations imply that MemberWorks benefitted from the information CISI provided about Coverdell (see Revised Complaint, Count Nine, §§ 21, 22, 23), that the benefit was unjust because MemberWorks did not compensate CISI (see Revised Complaint, Count Nine, § 24), and that MemberWorks' failure to make the anticipated payments operated to the detriment of CISI (see Revised Complaint, Count Nine, §§ 24, 25).
MemberWorks' contention that CISI improperly included the allegation of an enforceable contract within its claim for unjust enrichment is unpersuasive for two reasons. First, although count nine incorporates most of the allegations from count one, it does not incorporate § 26, the only paragraph in count one which specifically alleges breach of contract. Second, even if CISI had alleged two theories of recovery within a single count, the court has
 "uniformly approved the use of a single count to set forth the basis of a plaintiffs claims for relief where they grow out of a single occurrence or transaction or closely related occurrences or transactions, and it does not matter that the claims for relief do not have the same legal basis. It is only when causes of action, that is, the groups of facts upon which the plaintiff bases his claims for relief, are separate and distinct that separate CT Page 4836 counts are necessary or indeed ordinarily desirable." (Internal quotation marks omitted.) Burns v. Koellmer, 11 Conn. App. 375, 387, 527 A.2d 1210 (1987)
Accordingly, the court finds that count nine properly alleges unjust enrichment.
 C Promissory Estoppel
Count three alleges that the July 31, 1997 letter and attached memorandum constitute a promise that MemberWorks would not undertake a business relationship with Coverdell without compensating CISI based upon the net revenues derived from MemberWorks relationship with Coverdell, and that CISI justifiably relied upon and is entitled to enforce this promise. Count seven alleges in more general terms that MemberWorks' oral and written commitments to share with CISI the revenues it received from Coverdell constitute promises upon which CISI justifiably relied and is entitled to enforce.
MemberWorks argues that CISI fails to allege the essential elements of a claim for promissory estoppel and that, as in count nine, two claims, breach of contract and promissory estoppel, have been improperly combined in counts three and seven. CISI replies that it has properly alleged the requisite elements.
[U]nder the doctrine of promissory estoppel, [a] promise which the promiser should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promissor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." (Internal quotation marks omitted.) D'Ulisse-Cupo v. Board of Directors of NotreDame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987).
To the extent that the allegations in count three are CT Page 4837 based upon the contents of the July 31, 1997 letter from MemberWorks to CISI, they are legally insufficient. MemberWorks promised in its letter that it would not market directly to Coverdell and would pay CISI a fee for net revenues derived from the Coverdell relationship. However, the letter was written at least one month after CISI had introduced MemberWorks to Coverdell and taken other significant steps to foster a relationship between the two companies. Therefore, MemberWorks' written promises did not induce CISI to act to its benefit by introducing the companies. CISI also fails to allege that the July 31, 1997 letter induced it to participate in the August meetings and ensuing discussions with MemberWorks and Coverdell, or that it expected those meetings and discussions to result in new and different benefits than the benefits derived from its earlier actions. Accordingly, count three is legally insufficient to the extent that it relies upon the July 31, 1997 letter and attached memorandum.
Count seven alleges that MemberWorks' oral and written commitments to share revenues based on the Coverdell relationship constitute promises upon which CISI justifiably relied and is now entitled to enforce.
MemberWorks argues that such oral and written commitments are neither sufficiently promissory or definite to support liability and that none contemplated the possibility that MemberWorks might acquire one of the new accounts. CISI replies that it has alleged all of the necessary elements for promissory estoppel.
In this case, CISI properly alleges promissory estoppel because its reference to oral and written commitments includes the parties' 1996 agreement. In that agreement, CISI alleges that it made a commitment to locate customers to whom MemberWorks could sell its programs in return for a percentage of the net revenues derived from ensuing relationships between MemberWorks and the new accounts. (See Revised Complaint, Count Seven, §§ 5, 6.) Since what is necessarily implied in an allegation need not be expressly alleged; see Pamela B. v.Ment, supra, 244 Conn. 308; by implication, the complaint sufficiently alleges that the agreement was designed to induce MemberWorks to locate customers, such as Coverdell, for MemberWorks, and once introductions were made, MemberWorks was obligated to compensate CISI for future revenues produced by CT Page 4838 the new accounts. CISI also alleges that it subsequently introduced MemberWorks to Coverdell; (see Revised Complaint, Count Seven, §§ 8, 10, 12, 14 and Exhibit C); but failed to receive the anticipated revenues. (See Revised Complaint, Count Seven, § 24.) CISI finally alleges that it justifiably relied upon and is entitled to enforce this commitment. (See Revised Complaint, Count Seven, § 27.) Accordingly, the court finds that count seven adequately alleges all of the elements necessary to support a claim for promissory estoppel, insofar as the claim relies upon the parties' 1996 agreement. All other agreements referred to in the revised complaint, having been made after the introduction of Coverdell to MemberWorks, are inadequate to support the claim for promissory estoppel because they did not induce CISI to make the introduction.
 D Anticipatory Breach of Contract
Count eight alleges that CISI reasonably anticipates that MemberWorks will continue to breach the payment obligations it owes to CISI and that CISI will continue to be harmed.
MemberWorks argues that CISI's allegations of an anticipatory breach of contract are legally insufficient because the allegation must state that the breaching party repudiated its duty prior to the time performance is due, but that CISI alleges MemberWorks has already breached its contractual obligations. CISI replies that MemberWork's August 8, 1997 letter provided that it would pay CISI a portion of the revenues MemberWorks receives from the Coverdell opportunity over a period of time, and that MemberWorks has clearly acted in a manner indicating that it will not pay the required revenues in the future.
An anticipatory breach of contract occurs when the breaching party repudiates his duty before the time for performance has arrived. Its effect is to allow the nonbreaching party to discharge his remaining duties of performance, and to initiate an action without having to await the time for performance. Thames River Recycling, Inc. v.Gallo, 50 Conn. App. 767, 791, 720 A.2d 242 (1998). The manifestation of intent not to render the agreed upon performance may be either verbal or nonverbal and is largely a factual determination in each instance. Pullman, Comley,CT Page 4839Bradley Reeves v. Tuck-it-away, Bridgeport, Inc.,28 Conn. App. 460, 465, 611 A.2d 435, cert. denied, 223 Conn. 926,614 A.2d 825 (1992)
Here, the claim in count eight for anticipatory breach of contract is legally insufficient because CISI fails to allege that MemberWorks repudiated its duty before the time for performance. See Thames River Recycling, Inc. v. Gallo,
supra, 50 Conn. App. 791. The allegations that CISI reasonably anticipated that MemberWorks would continue to breach its payment obligations to CISI are vague and indefinite. Accordingly, the court finds that the allegations in count eight are legally insufficient to support a claim for anticipatory breach of contract.
 E CUTPA Violations
Count eleven alleges that MemberWorks' actions were immoral, unethical, oppressive and unscrupulous, that MemberWorks' use of confidential information from CISI about Coverdell to the exclusion of CISI violates public policy and that such actions constitute unfair and deceptive trade practices within the meaning of CUTPA, as a result of which CISI has suffered an ascertainable loss.
MemberWorks argues that the CUTPA claim fails for lack of specificity. MemberWorks argues that the claim does not allege how or in what respect the alleged activities violate CUTPA or how MemberWorks' actions resulted in substantial injury to consumers. MemberWorks also argues that a simple breach of contract claim is insufficient to support a CUTPA violation. CISI replies that the allegations in its CUTPA claim are legally sufficient because the same facts that establish breach of contract may be sufficient to establish a CUTPA violation. CISI also contends that a CUTPA claim need not allege injury to a consumer.
Section 42-110b (a) provides that [n]o person shall engage in unfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce. It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a CT Page 4840 practice is unfair: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers [competitors or other businessmen]. All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because of a lesser extent it meets all three. HartfordElectric Supply Co. v. Allen-Bradley Co., 250 Conn. 334,367-68, 736 A.2d 824 (1999)
Here, insofar as the CUTPA claim is based on the July 31, 1997 letter, CISI adequately alleges that MemberWorks used the confidential information about Coverdell for its own use to the exclusion of CISI, and that this was immoral, unethical, oppressive, unscrupulous and a violation of public policy. (See Revised Complaint, Count Eleven, §§ 13, 14, 24, 27, 28, 29 and Exhibit C.) Since all three criteria do not need to be satisfied, CISI need not allege injury to a consumer. SeeHartford Electric Supply Co. v. Allen-Bradley Co., supra,250 Conn. 368. Accordingly, the court finds that the allegations in count eleven are legally sufficient to support a CUTPA claim.
 F Request for Relief
CISI seeks specific relief in each of the alleged counts, including "attorneys fees under common law" in counts three through ten.
MemberWorks argues that the request for "attorneys' fees under common law" is improper because none of the claims in the specified counts are based upon contractual provisions entitling CISI to attorneys' fees, and CISI has not cited any statutory authority that entitles it to such fees. CISI replies that to the extent that the confidentiality agreement provides some or all of the basis for its claims, its request for "attorneys' lees under the common law" is appropriate.
The general rule of law known as the "American Rule" is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a CT Page 4841 contractual or statutory exception. This rule is generally followed throughout the country. Connecticut adheres to the American Rule. There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs or a statute may confer such rights.Rizzo Pool Co. v. Del Grosso, 240 Conn. 58, 72, 689 A.2d 1097
(1997).
In the present case, CISI's claim for attorneys' fees is proper to the extent that the first through the tenth counts rely on and incorporate the terms of the confidentiality agreement. See Practice Book § 10-29; Moukarzel v. OxygenElectronics, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 359965 (August 12, 1999, Melville, J.) ("When a copy of a contract is attached to the complaint, the court can consider the contract as part of the complaint for purposes of the motion to strike.") (Internal quotation marks omitted.); Scacco v. United Technologies, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 124001 (June 5, 1997, Leheny, J.). Moreover, CISI's claim for attorneys' fees in the eleventh and twelfth counts is proper because those counts are based on the Connecticut Unfair Trade Practices Act. See General Statutes § 42-110g (d).[3]
Accordingly, the court denies the defendant's motion to strike CISI's request for relief in the form of attorneys' fees.
 III
For all of the foregoing reasons, the court GRANTS the motion to strike counts one, three and eleven, insofar as theyrely upon the confidentiality agreement, and, further, GRANTS
defendant's motion to strike counts two, three, four, five, seven, eight, ten and twelve. The court DENIES the motion to strike the request for attorneys' fees in all of the counts.
Moreover, the court further DENIES the motion to strike counts one, three and eleven, insofar as they rely upon MemberWorks'July 31, 1997 letter to CISI. The court also DENIES the motion to strike counts six and nine.
MELVILLE, JUDGE.